From M. M. Burke, Shenandoah, Pa.

---

## Schell's Estate.

*Guardian and ward — Removal of guardian — Application by minor over fourteen years of age—Hostile relations between guardian and ward.*

1. The choice of a guardian by a minor over fourteen years of age is not absolute, but rests in the sound discretion of the court. The child is the ward of the court, and the guardian is its officer.

2. If the guardian nominated is deemed by the court not a suitable person for the protection of the minor, he will not be appointed.

3. A minor, on reaching the age of fourteen years, may petition the court to remove the guardian previously appointed for her and appoint another person.

4. If it appears, in such case, that the relations between the guardian previously appointed and the ward are bitterly hostile, a new guardian will be appointed in place of the old one.

Citation on former guardian to show cause why he should not be removed and another appointed. O. C. Snyder Co.

*Charles P. Ulrich,* for citation; *Henry H. Grimm,* for respondent.

POTTER, P. J., April 18, 1925. — At the October Sessions of the Court of Quarter Sessions of Snyder County we had before us for trial a case of fornication and bastardy, wherein Mabel Specht was the prosecutrix and Chester Steffen was the defendant. The case was duly tried before a jury and a verdict of guilty was rendered. We imposed the usual sentence as to lying-in

expenses, fine and the costs, and further sentenced the defendant to pay to the prosecutrix the weekly sum of $2 till the child reached the age of seven years. The defendant gave security for the faithful compliance with the sentence and was permitted to return to his home in Selinsgrove. He has complied with the sentence up to the present time, paying the said weekly sum of $2 promptly.

We know this prosecutrix as well as her father, neither of whom are blessed with a superabundance of intelligence. It was brought to our knowledge not long after this sentence was imposed that near relatives of this girl, her father included, were attempting and were succeeding in getting this money from the girl.

This weekly payment is intended to be used for the support of the child as far as it will go. Feeling that this money would be gotten from this girl, and that it would not be applied to the purpose for which it was intended, we took it upon ourselves to appoint a suitable person as guardian for the girl in the person of Elmer G. Zechman, in whom we have all confidence, permitting him to enter security by giving his own bond in the sum of $200. He gave the bond on Jan. 29, 1923, the date of his appointment, and immediately entered upon the duties incident to his appointment, and this weekly sum of $2 has been, since that time, paid to him, the girl with her child was taken into his family and all was serene and happy.

Not long after, this girl was married to one Calvin Schell and she went to live with him, taking her child with her, and from that time on there was no end of trouble for the guardian. Just exactly what was the cause of all this trouble has not been proven to us, although we think we well know its origin, and we do know that Schell fell out with Zechman in some way regarding this money and the care of the child, and the girl took sides with her husband, Schell, against the guardian. Various altercations arose at times when Schell or his wife, or both of them, came to the home of Zechman, which resulted in him swearing out a warrant charging Schell with surety of the peace, since which time none of these parties have had any dealings with each other whatever. When the case was heard we very plainly warned Schell to stay away from Zechman's home, for it was very evident to us who was to blame.

Recently this girl, now Mabel Specht Schell, the wife of Calvin Schell, presented her petition to the Orphans' Court, namely, on Jan. 17, 1925, wherein she states that as she is above the age of fourteen years, she now requests permission to come into court and make choice of her own guardian. On this petition we awarded a citation, which was argued on April 11, 1925, and which we now have before us for disposal.

It is a legal principle which needs no discussion that the court appoints guardians for minors below the age of fourteen years on the petition of the next friend, and that minors above that age are permitted to choose their own guardians under the supervision of the court. These minors are wards of the court, and whether under or over fourteen years, the matter of a choice of a guardian is not an absolute one, but rests in the sound discretion of the court, keeping in mind the best interests of the child. If the choice of a guardian by a minor over fourteen years of age was an absolute one beyond the discretion and supervision of the court, then, indeed, the minor well could name his own guardian and the petition to the court for permission to choose would be a vain and useless thing. The minor is permitted to name his guardian, and if the court, in its sound discretion, deems the person named a suitable person, the nomination is ratified and the appointment is made. If, however, the court deems the person so named as unsuitable for the promotion of the best

interests of the child, the nomination is refused. During the period of such guardianship the child is a ward of the court and the guardian is its officer.

In the case at bar we are asked to remove Zechman for no especial reason and appoint M. H. Walter, who has been named by the minor.

In this respect the action of the Orphans' Court, in its sound discretion, in affirming or refusing the nomination of the minor, will not be reviewed by an appellate court: Gray's Appeal, 96 Pa. 243; Pote's Appeal, 106 Pa. 574; McCann's Appeal, 49 Pa. 304.

These are cases where the Orphans' Court refused to remove the guardian appointed before the minor had attained the age of fourteen years and appoint another one named by the minor after attaining the age of fourteen years.

By changing guardians quite an item of expense is incurred which will naturally deplete the small sum in the hands of this guardian, which we, as the court, and he, as the guardian, have been endeavoring to husband for this child later on in life, and we very much regret this unpleasant state of affairs between this ward and her guardian, the existence of which we do not lay at the door of the guardian by any means. We think he has faithfully done his full duty, and, in some respects, more than he was required to do. We cannot but say that we firmly believe that, had this girl not married her present husband, no trouble would have arisen. However, it is here, and we must meet it, and we will.

On the other hand, we have cases where the Orphans' Court have allowed a change of guardians upon the attainment of the age of fourteen years by the ward: Lee's Appeal, 27 Pa. 229; Crawford's Estate, 4 Pa. C. C. Reps. 507; Arthur's Appeal, 1 Grant, 55; Lewry's Estate, 5 W. N. C. 475, and in these cases that were appealed, the appellate court again refused to interfere with the discretion of the Orphans' Court.

There is no doubt but that when a minor attains the age of fourteen years he may appear in the Orphans' Court and make choice of a guardian, and even so when a change in the guardianship will be made, but the person nominated may be affirmed or refused in the discretion of the court, which brings it up to this court to say whether or not Zechman shall be removed and Walter appointed.

This point in the case brings us to the consideration of the state of feeling between this ward and her guardian. To say the least, they are not harmonious, and, as a matter of fact, for some reason that has not been proven to us, she and her husband feel very bitter towards Zechman. With this condition existing, there cannot be that spirit of confidence and trust that should exist between them. It was said at the argument that neither she nor her husband would speak to Zechman. Such relations surely are not conducive to the welfare of the ward, and they make it very unpleasant for the guardian, with fair prospects for litigation in the future upon every trivial excuse. We think Zechman does not desire to continue to act as guardian in the face of trivial opposition to each and every move he may make, and we think he would rid himself of this burdensome and unpleasant task. However, were the relations not so much strained between him and his ward and her husband, we would not entertain a petition for relieving him, but, unfriendly as is this ward to him, we think he had better be relieved of an unpleasant task, and we find expression as herein contained borne out by abundant authorities, such as Kelberg's Appeal, 86 Pa. 129, and Silver's Estate, 18 Pa. C. C. Reps. 340.

While it is not the policy of the law to permit the removal of a guardian or any one standing in a fiduciary capacity, unless some dereliction of duty is

shown, nevertheless, in the present case we feel that with the spirit of enmity existing on the part of this ward and her husband—the husband especially— we think better results can be reached by the guardian of the ward's choice being appointed and the present guardian relieved from his embarrassing position.

We hope the transfer of the funds may be reached without the expense incident to the filing of an account, which would of necessity deplete the small amount in the hands of Zechman, the present guardian.

We have confidence in the new guardian, else we would not appoint him, but we want him to fully realize that he is responsible for every dollar that comes into his hands, and that if any article is necessary for the ordinary comfort of this child, he is to purchase it and pay for it from the funds in his hands. And we want him further to fully realize that he is not supposed to hand over this money, or any part of it, to this husband or to his wife.

And now, to wit, April 18, 1925, for the reasons as expressed in this opinion, the citation is made absolute; E. G. Zechman is relieved from the guardianship of Mabel Specht Schell, and M. H. Walter is appointed as her guardian in his stead, he to enter into bond in the sum of $800, conditioned for the faithful performance of his duties as such guardian, with A. A. Bingaman, C. H. Wolfley and Calvin Schell as sureties, which bond, having been presented to the court, is hereby approved. The duties of the new guardian to begin on this date.