## Morrissey Estate.

440

Argued April 30, 1970. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*H. Rank Bickel, Jr.*, with him *James R. Koller*, and *Siegrist, Koller & Siegrist*, for appellants.

*Allen H. Krause*, with him *Henry J. Steiner*, for appellee.

Opinion by Mr. Justice Pomeroy, October 9, 1970:
This case involves the propriety of the appointment of guardians for the estates of three minor children, all 14 years of age or older, sons of Hilda G. Morrissey,

the petitioner for the appointment, and of J. Michael Morrissey, Sr., the guardian ad litem and appellant herein.[1]

While guardianship for the estates of minor children is the precise matter in controversy, the background indicates that the larger controversy is, as the lower court's opinion states, "the control of a family controlled oil company, most of the stock of which was in the names of the father, mother and the children." This larger controversy is apparently also related to marital difficulties between the parents, Hilda and J. Michael Morrissey, Sr., who had separated prior to the start of these proceedings. Some of the salient facts as given by the lower court in its opinion are as follows: "The oil company was originally founded by the maternal grandfather of the minors. The father is president of the company and the mother was, until the transfer of stock hereinafter referred to, a paid officer. The three boys live with the father and are employed by the oil company. They are fourteen years of age and over [Michael, Jr. was age 20, David 18, and Daniel 14]. The boys transferred to their father their certificates of stock at book value which undoubtedly was considerably less than the real value of such stock.[2] The father gave his personal notes [each in the amount of $3,229.59] to the boys payable when they attain the age of twenty-one. No interest was to be paid on the notes. One of the purposes of the transfer, if not the only one, was to give the father control of the com-

---

[1] The three separate guardianship proceedings were consolidated for hearing and decision below, and the appeals to this Court were likewise consolidated. Under §12, Rule 5(d) of the Orphans' Court Rules, if the appointment of the same person is requested as guardian of the estates of minors who are children of the same persons, a single petition should be filed for such appointment.

[2] While the record indicates the book value of the stock, there is no evidence as to the fair market value.

pany. The boys' stock certificates were not delivered to the corporation as required by the by-laws because they were in the mother's possession. The transfer was made on the advice of the father's attorneys. The father used the control he got from the transfer to oust the mother from her paid office."

The testimony at the hearing further showed that all of the promissory notes were placed in a safe deposit box in the name of Michael Morrissey, Jr.; that after the filing of the petitions in this case and before the filing of answers the three minors withdrew substantially all of the money in their respective bank accounts;[3] and that these funds also were placed in Michael, Jr.'s safe deposit box. The transfers of these funds, like the assignments of the shares of stock, were made on advice of counsel for the father with a view to preventing a guardian, if appointed, from obtaining control of the funds or of the promissory notes. The two older boys, Michael and David, testified that they had sold their stock to their father in order to protect their interest in the corporation, and the corporation itself, from their mother, who, according to them, was not capable of operating the business. David, in fact, said "my mother is out to destroy" the company, but could not indicate any basis for this assertion.

At the conclusion of the hearing the court appointed First National Bank, Lebanon, Pennsylvania, to be guardian of the estate of each minor, and directed that the safe deposit box of Michael might not be entered without an order of court. These appeals are from that order by the father as guardian ad litem.

The eldest child, Michael, Jr., became of age on February 1, 1970, two weeks after these appeals were taken. As the court below pointed out, Michael could,

---

[3] Approximately $1,800 in the case of Michael, $5,200 in the case of David, and $2,000 in the case of Daniel.

upon attaining age 21, either ratify or disaffirm transactions to which he was a party during his minority. Because of this appeal, the guardian has not undertaken any of its duties. The case as to Michael at No. 325 is therefore moot, and the appeal on his behalf will be dismissed.[4]

Appellant's first contention is that the mother of the minors had no standing to petition for the appointment of a guardian for their estates, since each minor was over 14 years of age.[5] Rule 5(a) of §12 of our Orphans' Court Rules supports this position. It provides as follows: "(a) A petition for the appointment of a guardian for the estate . . . of a minor shall be filed by the minor, if over fourteen years of age and, if under such age, by his parent or parents, the person with whom he resides or by whom he is maintained or by any person as next friend of the minor." Rules promulgated by courts for the conduct of their business are of course intended to be followed and not flouted or ignored, and in a proper case, when the rights of parties depend upon observance of a rule, we insist upon such observance and will often reverse because a rule has been disregarded. *Brennan's Estate*, 65 Pa. 16 (1870); cf. *Bailey Estate*, 384 Pa. 24, 119 A. 2d 234 (1956). But, as it has often been said, "courts are the best exponents of their own rules", *Brennan's Estate*, *supra*, and it is a rare rule that has no permissible exception. We believe that an exception was warranted

---

[4] Anticipating this disposition of the appeal as to Michael, Jr., the lower court in its opinion stated that "[t]he guardian not having undertaken any of its duties in this action [as to Michael, Jr.] will not be permitted to collect any fee in this case."

[5] While this objection was not raised in the answers to the petitions and no preliminary objections were filed, it was the basis of a motion to dismiss made at the close of petitioner's case, and, at the conclusion of the hearing, to the appointment of a guardian.

in this case, especially in light of the liberal construction of the Orphans' Court Rule prescribed by Rule 1 of Section 2. Each of the petitions filed by Hilda Morrissey for the appointment of a guardian for the two older boys contained this averment: "That the reason that the minor has not filed this Petition nor his father joined in consent thereto is that the said minor is under the complete domination of his said father who, for personal reasons, refuses to join in having a guardian appointed."[6]

The petitioner was thus clearly aware of the rule, was not flouting it, but was tendering an explanation for noncompliance. While these averments were denied in the answers and in the testimony of Michael and David, and it was stated that a guardian was neither needed nor desired, it is clear that the court did not believe the denials, and was convinced that a guardian was necessary to protect the minors' estates. The court's conclusion was based on ample foundation and no question of power or jurisdiction is involved. The Orphans' Court Act, now applicable to the Courts of Common Pleas, provides that "The Orphans' Court shall have exclusive jurisdiction of: . . . (4) The administration and distribution of the real and personal property of minors' estates." Act of August 10, 1951, P. L. 1163, §301, as amended, 20 P.S. 2080.301. Moreover, the Act, declaratory of this Court's many prior decisions, invests the Orphans' Court with "all legal and equitable powers required for or incidental to the exercise of its jurisdiction." §304, 20 P.S. 2080.304. The action of the

---

[6] The petition with regard to a guardian for Daniel, the youngest minor, then 14 years of age, does not contain such an averment, presumably because the rule, in stating the requirement that the minor should file, speaks in terms of "*over* fourteen years of age." (Emphasis supplied.) We think the proper reading of the rule is that if a minor is fourteen years of age or older, the petition should be filed by him.

court below was completely within this broad grant of power intended for the protection of property of minor children.

Closely related to petitioner's standing to file a petition in light of the minors being over fourteen years of age is the right of such minors to nominate their own guardian. The Fiduciaries Act provides that "A person nominated by a minor over the age of fourteen, if found by the court to be qualified and suitable, shall be preferred as guardian of his person or estate." Act of April 18, 1949, P. L. 512, art. X, §1013, 20 P.S. 320.1013.[7].

In the case at bar the hearing judge, while not expressly requesting nominations from the minors, stated his intention to appoint a neutral bank as guardian, and said "I don't want a bank with whom either of these parties deal." Both parents and all three minors were in court. The judge then asked, "Where do these parties deal?" Mr. Morrissey, Sr., through counsel, named two banks having no connection with the parties. Counsel for petitioner objected to one of the two; whereupon the court appointed the other bank after confirming that petitioner had no dealings with it.

While the right of a minor over fourteen to nominate his guardian has an ancient lineage at common law, see 1 Blackstone's Commentaries, 463, *Lee's Appeal*, 27 Pa. 229 (1856), and is now provided by statute, it is not absolute. The minor's choice "will be sanctioned or not as the discretion of the court shall direct." *Lee's Appeal, supra; Gray's Appeal,* 96 Pa. 243 (1880). Here all parties, the minors included, were given an

---

[7] Pursuant to Supreme Court Orphans' Court Rule 5(e) of Section 12, the Orphans' Court of Lebanon County has provided by local rule that a minor over the age of fourteen "shall appear in person at the presentation of the petition and shall make his selection at the Bar of the Court, unless excused by the Court for cause shown." (Rule 12.5A)

opportunity to suggest the names of neutral banking institutions. The children's father submitted two names, presumably with the acquiescence of the minors. Under the circumstances of this case we think this was adequate compliance with the statute.

Beyond the procedural matters above discussed, the guardian ad litem contends that there was no valid reason for the appointment of a guardian of the minors' estates and that the court abused its discretion in doing so. He states that there was no evidence that the children were about to squander their money or that they were under the domination of their father; that the sale of the stock to their father was upon advice of counsel and for the legitimate purpose of vesting corporate control in their father and keeping it away from their mother; and that, as the minors were advised before assigning their shares, the sales can be avoided when the minors attain their majority.

The discretion of a court in the appointment or non-appointment of a guardian will not be disturbed on appeal in the absence of an abuse of discretion or an error of law. *Cf. McCann's Appeal*, 49 Pa. 304, 309 (1865) ; *Gray's Appeal*, supra. As indicated above, there is ample support in this record for the court's conclusion that the appointment of a guardian was necessary for the protection of the estates of these minors. The transfer of the stocks without (apparently) any indication that the purchase price reflected their fair value; the payment therefor not by cash but by non-interest bearing promissory notes payable upon attaining age 21 (7 years hence in the case of Daniel, 3 years hence in the case of David) ; the placing by David and Daniel of their notes, together with over $7,000 of their cash in Michael, Jr.'s safe deposit box after the filing of the petitions herein; and the fact that repudiation of the transactions upon reaching majority might be a futile thing, depending on the fortunes of the company mean-

while, were all factors which influenced the court below. We can find no abuse of discretion or error in the court's determination that a guardian should be appointed.

Appellant argues, lastly, that the lower court had no authority to enjoin the opening of Michael, Jr.'s safe deposit box without an order of court allowing it. He relies upon the provisions of Pennsylvania R.C.P. 1531 governing the issuance of injunctions in equity cases and requiring written notice and hearing, and the posting of bond. This rule is inapplicable. The existence and use of the safe deposit box came to light only in the course of the hearing; the petitioner had sought no injunction concerning it; the avowed purpose of having Michael, Jr. rent the box, and of placing David's and Daniel's notes and cash therein, was to put their assets beyond the reach of a guardian;[8] their property thus deposited constituted almost their entire assets; Michael, Jr. was soon to become of age. The order of the court in this regard was obviously ancillary to the appointment of a guardian and to maintain the status quo until the guardian should be qualified and acting as such. It was clearly within the proper exercise of the court's equitable powers in acting for the best interests of minor children within its jurisdiction. *Watts's Estate*, 158 Pa. 1, 13 (1893).

The orders of the court at No. 326 and No. 327, pertaining to David G. Morrissey and Daniel P. Morrissey, respectively, are affirmed. The appeal at No. 325, pertaining to J. Michael Morrissey, Jr. is dismissed as

---

[8] Appellant relied on §603 of the Banking Code of 1965, Act of November 30, 1965, P. L. 847, §603, 7 P.S. 603. This section, however, confers authority on a bank to rent a safe deposit box to a minor only in the case of a minor who is married, and in such case the rental is to be to the minor and spouse jointly. Michael, Jr. was not married.

moot. Costs on James M. Morrissey, Sr., individually, and not as guardian ad litem.[9]

[9] The lower court's opinion states: "We reluctantly made an order permitting the father to act as guardian ad litem for the purpose of the appeal but expressed the opinion that under no circumstances should the boys' estates be charged with any costs or expenses attendant to the appeal. It is too apparent that the appeal is taken for the father's and not the minors' benefit." While Mr. Morrissey, Sr. individually is not a party of record, he was evidently the "moving party" and is "liable for the costs which he has caused to be incurred." *Schor v. Becker*, 437 Pa. 409, 412, n.5, 263 A. 2d 324 (1970).