## In re Estate of Collins

*Brian M. Puricelli,* for appellant.
*Maris C. Langford,* for Mrs. Collins.
*Richard D. Magee Jr.,* for Mrs. Ablassmeir.
*Francis J. Sullivan,* for David J. Collins and Eileen M. Bray.

FRITSCH JR., *J.,* February 27, 2008—On October 19, 2007, based upon clear and convincing evidence, we adjudicated Eileen D. Collins, currently 81 years of age, an incapacitated person, and appointed her daughter Donna L. Ablassmeir the permanent plenary guardian of her person and estate. On November 19, 2007, Eileen D. Collins' husband, David R. Collins (appellant), filed with this court a notice of appeal to the Pennsylvania Superior Court. This opinion is filed in accordance with Pa. R.A.P. 1925(a).

## BACKGROUND

Eileen D. Collins is currently 81 years old. She has been married to appellant, who is 84 years of age, for over six decades. (N.T., 9/7/07, p. 139; N.T., 10/16/07, p. 15.) They have seven adult children: Arlene B. Collins Carlough, Donna L. Ablassmeir, David J. Collins, Eileen Mary Bray, Barbara Sue Collins, Kathleen Seibert and Maureen Cullen.

In August of 2007, Donna L. Ablassmeir filed petitions for the adjudication of her parents, Eileen D. Collins and appellant, as incapacitated persons and for her appointment as the plenary guardian of their persons and estates.

Her petition respecting appellant's status as an alleged incapacitated person is being considered in a parallel but separate proceeding in this court. See *In re Estate of David R. Collins, An Alleged Incapacitated Person,* Bucks County Court of Common Pleas, Orphans' Court Division, no. 2007-0363.

Four of Mrs. Collins' children, Kathleen Seibert, David J. Collins, Maureen Cullen and Eileen Mary Bray, filed a response to Ablassmeir's petition in the within matter. They did not contest a finding of incapacity but objected to Ablassmeir's request to be appointed the guardian of Eileen D. Collins' person and estate. They petitioned for the appointment of David J. Collins as the plenary guardian of Mrs. Collins' estate and of Eileen Mary Bray as the plenary guardian of her person. Compare petition (Aug. 19, 2007) with response (Sept. 6, 2007).

Upon the request of Mrs. Ablassmeir, the Honorable Daniel J. Lawler, who has since retired from the bench, appointed independent counsel for Mrs. Collins. Order, Lawler, J. (Aug. 20, 2007). Mrs. Collins' court-appointed counsel for purposes of the within matter is Maris C. Langford, Esquire. Mrs. Collins, by and through her counsel, did not contest the petitions.

Evidentiary hearings were held on September 7, 2007[1] and October 16, 2007.[2] Appellant was present at both

---

1. The September 7, 2007 proceeding was presided over by the Honorable Daniel J. Lawler, who has since retired from the bench. For a thorough description of the evidence adduced at this hearing, see Judge Lawler's opinion dated September 27, 2007, in the matter of *In re Estate of David R. Collins, An Alleged Incapacitated Person,* Bucks County Court of Common Pleas, Orphans' Court Division, no. 2007-0363.

2. Soon after Donna L. Ablassmeir filed her petition, the court issued a preliminary decree, awarding a citation, directed to Eileen D. Collins,

hearings.[3] Brian M. Puricelli, Esquire, appellant's counsel, was present at the September 7, 2007 hearing. Attorney Theodore Kravitz, an associate of Brian M. Puricelli, Esquire, was present with appellant at the outset of the October 16, 2007 hearing. (N.T. 10/16/07, pp. 2-9.)[4]

---

to show cause why she should not be adjudicated an incapacitated person and Donna L. Ablassmeir should not be appointed plenary guardian of her person and of her estate, and scheduling a hearing on said petition for September 7, 2007. Preliminary decree, Judge Lawler, p. 1, ¶2 (Aug. 15, 2007). Due to the highly contested nature of the parallel petition to declare appellant an incapacitated person and appoint a guardian for his person and estate, the September 7, 2007 hearing focused on the need to conduct an independent evaluation of appellant pursuant to 20 Pa.C.S. §5511(d). (N.T., 9/7/07, passim.) Much of the evidence adduced at said hearing, however, was relevant to the within proceeding. Therefore, the transcript of the September 7, 2007 hearing was incorporated into the record of the instant guardianship proceeding by an order the undersigned issued from the bench. (N.T., 10/16/2007, p. 12.)

3. Regarding the notices given Mrs. Collins and appellant in accordance with 20 Pa.C.S. §5511(a), see N.T. 10/16/07, pp. 9-10; exhibit P-1.

4. The first matter addressed at the October 16, 2007 hearing was a contempt issue regarding the case of the estate of David R. Collins. The day before the hearing, Mr. Puricelli, by and through Mr. Kravitz, requested a continuance with respect to the contempt hearing also scheduled for that day. This court requested medical verification of his alleged illness, which Mr. Kravitz represented to this court to have been the reason for the continuance request. This court was not satisfied with the medical reason for the request, in that Mr. Puricelli's medically prescribed bed rest ended on October 16, 2007. (N.T. 10/16/07, pp. 2-3.) Moreover, Attorney Sullivan explained to this court that one of the siblings had seen Mr. Puricelli the day before in a parking lot speaking with his client. (N.T., 10/16/07, p. 6.) This court nonetheless agreed to continue the contempt matter on the ground that there was a motion for stay outstanding with respect to the underlying order at issue. (N.T. 10/16/07, pp. 2-6.)

Subsequently, Mr. Kravitz requested to be excused from the hearing. (N.T. 10/16/07, p. 3.) The undersigned asked Mr. Kravitz to consult

The attorneys for petitioners and for Mrs. Collins were present at both hearings.[5]

The evidence adduced before this court established that Mrs. Collins suffers from moderate to severe dementia. Written interrogatories with affidavit, John J. Filips D.O. (Sept. 5, 2007).[6] Her condition will not improve or subside over time, but will only exacerbate. *Id.* Moreover, Mrs. Collins' mental capacity has been progressively and substantially diminishing throughout the past five years. (N.T., 10/16/07, pp. 17, 19-21, 92, 97, 107.)

Because of Mrs. Collins' condition, she is totally unable to monitor and understand essential requirements for her medical care. Written interrogatories with affidavit, John J. Filips D.O. For example, she is unable to monitor the time and dosage levels of her prescribed medication. *Id.* (N.T., 10/16/07, pp. 21, 92, 107.) Sometimes she fails to take her medication for a couple of days at a time. (N.T., 10/16/07, pp. 17, 20.) She is also unable

with his client, appellant, as to whether appellant wished to participate in the hearing regarding his wife's alleged status as an incapacitated person. (N.T. 10/16/07, pp. 3, 8.) Mr. Kravitz informed this court that appellant did not wish to participate. (N.T. 10/16/07, p. 8.) Under these circumstances, this court excused Mr. Kravitz, who left the courtroom. (N.T. 10/16/07, p. 8.) Appellant, however, did stay throughout the proceedings and participated by randomly interjecting comments and objections, which were transcribed by the court reporter. (N.T., 10/16/07, p. 39.)

5. All of the petitioners and their siblings were present at the October 16, 2007 hearing. (N.T., 10/16/07, p. 10.)

6. Dr. Filips has been Mrs. Collins' treating physician since March of 2003. Written interrogatories with affidavit, John J. Filips D.O. (Sept. 5, 2007.) The written interrogatories with affidavit was admitted into evidence on October 16, 2007. (N.T., 10/16/07, p. 10.) Dr. Filips' curriculum vitae was also admitted into evidence. (N.T., 10/16/07, pp. 10-11; exhibit P-3.)

to schedule her medical appointments. (N.T., 10/16/07, pp. 21, 142.)

Also as a result of the dementia, Mrs. Collins has poor memory and insight. Written interrogatories with affidavit, John J. Filips D.O. (N.T., 10/16/07, pp. 21-22, 91, 107.) This has caused her to be unable to handle a checking account, pay bills in a timely fashion, or monitor her finances. *Id.* (N.T., 10/16/07, pp. 97, 106.) For example, David J. Collins testified that he paid most of his parents' bills from 2003 to mid-2007. (N.T., 9/7/07, p. 133; N.T., 10/16/07, pp. 42, 213.) He did so because his parents were not paying essential bills, allowing policies to lapse and utilities to be shut off. (N.T., 10/16/07, p. 42.)

In addition, Donna L. Ablassmeir reported an incident that occurred in January of 2007. Mrs. Ablassmeir inquired about a debit entry in Mrs. Collins' checkbook because the entry was not in Mrs. Collins' handwriting. Mrs. Collins replied: "I think I was at the bank with David yesterday, but I'm not sure." (N.T. 10/16/07, pp. 36-37.)

According to David J. Collins, he made the debit entry. The day before, he had taken Mrs. Collins and appellant to the bank, at the insistence of appellant, for the purpose of having Mrs. Collins cash in one of her IRA accounts. David J. Collins testified that he heard appellant tell Mrs. Collins that he would divorce her if she did not pay their son half of what they owed him for the bills and other expenses their son had been paying on their behalf since 2003. (N.T., 10/16/07, pp. 215, 220, 238.) David J. Collins took his parents to the bank where Mrs. Collins turned over the sum of $9,990 to her son. (N.T., 10/16/07, pp. 220, 232, 238.) While at the bank, David J. Collins also obtained a power of attorney from his mother grant-

ing him access to her bank accounts. (N.T., 10/16/07, p. 213.) He admitted that his mother did not fully comprehend what she was doing when she turned the money over to him and executed the powers of attorney. (N.T., 10/16/07, p. 236.)

Appellant and Mrs. Collins have had, over the past several years, marital disagreements, which are apparently due, in part, to their advanced age and diminished mental capacity. (N.T., 10/16/07, pp. 19-20, 29-30.) Ms. Bray testified that appellant has threatened Mrs. Collins with divorce several times. (N.T., 10/16/07, p. 181.) Ms. Bray also testified that she received notice from appellant's attorney, Brian M. Puricelli, Esquire, stating that there was going to be a divorce proceeding in the future. (N.T., 10/16/07, pp. 183-84.)

Many of the couple's disagreements appear to focus on their marital assets and marital expenses. For example, when Mrs. Collins received an inheritance, appellant began to insist that Mrs. Collins pay for half of all the marital expenses from her own money. This threatened to deplete her resources and increase her financial dependence on appellant. (N.T., 10/16/07, pp. 212-13, 218, 220, 237.) While appellant has access to approximately $900,000 in certificates of deposit, investments, and checking and savings accounts, Mrs. Collins has access to only one tenth of that sum, *i.e.,* roughly $90,000. (N.T. 9/7/07, pp. 128-29; N.T., 10/16/07, p. 237.) Moreover, while appellant receives $1,600 per month in the form of Social Security income, Mrs. Collins receives only $696 per month. (N.T. 9/7/07, pp. 128-29.)

In light of these economic disparities and appellant's coercive behavior as recited above, we perceived Mrs. Collins to be in a precarious situation. Donna L. Ablass-

meir described her mother as being the victim of financial abuse at the hands of her father and indicated that appellant has always kept strict control over the couple's money. (N.T., 10/16/07, p. 42.) At the conclusion of the hearing, Maris C. Langford, Esquire, counsel for Mrs. Collins, asked this court to freeze any accounts in which Mrs. Collins has a property interest. (N.T., 10/16/07, p. 255.)

Mrs. Collins' children agree that the patchwork care she has been receiving from them is not working properly, and is taking a toll on the family, even though they have been doing the best they can under the circumstances. (N.T., 10/16/07, pp. 22-28, 35-36, 61-66, 79, 92-93, 159-61, 199, 224.) The family members have had irreconcilable disagreements periodically as to how to best take care of Mrs. Collins and her husband. (N.T., 10/16/07, pp. 99-100, 113-14, 127-28, 140, 145, 159-61, 224.) One such disagreement occurred around March or April of 2007, when appellant was hospitalized on two occasions. (N.T., 10/16/07, pp. 25-26, 36, 152, 159-61, 224-25.)

Throughout the time appellant was hospitalized, Mrs. Collins stayed for a few days at David J. Collins' house and for a few days at Barbara Sue Collins' house. (N.T., 10/16/07, pp. 25, 155.) Upon appellant's discharge from the hospital, there was continued uncertainty as to what living arrangements would be best for Mrs. Collins. (N.T., 10/16/07, pp. 26-28, 118, 152-53, 224.) Eventually, Mrs. Collins' children arranged for her to move into an apartment complex with appellant. (N.T., 10/16/07, pp. 27-28, 120-21.)

At around this time, the petitioners and their siblings agreed that it was necessary to have a guardian or guard-

ians appointed for their parents, so that they could receive effective and consistent care, as well as proper attention to their individual needs. They visited an attorney for this purpose. (N.T., 10/16/07, pp. 61-66, 191.)

The evidence before this court clearly and convincingly established that Mrs. Collins was incapacitated and in need of a plenary guardian for her person and estate. Furthermore, this court was satisfied, based upon the totality of the evidence, that Mrs. Ablassmeir would be the person most appropriate to serve as the plenary guardian of her mother's person and estate.[7]

Donna L. Ablassmeir is 49 years of age. (N.T., 10/16/07, p. 14.) She worked as a legal secretary for over 26 years. (N.T., 10/16/07, p. 14.) At the hearing, she testified that she visited her parents two to three days a week, and was purposely working only part-time as an administrative assistant to have more time to take care of her parents. (N.T., 10/16/07, p. 16.)

Mrs. Collins and Mrs. Ablassmeir have a good relationship. Of all the petitioners who volunteered to serve as Mrs. Collins' guardian, Donna L. Ablassmeir appeared to be most responsive to Mrs. Collins' expressed wishes and needs. (N.T., 10/16/07, pp. 13-82, 93-96, 108, 122-23, 130-205, 207-41.) Often, Mrs. Collins turns to Mrs. Ablassmeir for help when she feels isolated or when she needs refuge from her husband. (N.T., 10/16/07, pp. 17-18, 20.) Mrs. Ablassmeir knows her mother's favorite activities and favorite places to visit. (N.T., 10/16/07, pp. 17-18, 78.)

---

7. Although Mrs. Collins testified at the October 16, 2007 hearing, she, by and through her attorney, did not express a preference. (N.T., 10/16/07, p. 252.)

In short, Mrs. Ablassmeir is a competent and caring individual who appeared motivated and committed to taking proper care of her mother's person and estate.[8] (N.T., 10/16/07, pp. 26, 32-34, 43, 54.) In addition, this court was satisfied that she would be able to give appropriate weight to her mother's preferences whenever possible. (N.T., 10/16/07, pp. 34, 78.)

This court entered a final decree on October 19, 2007, adjudicating Mrs. Collins an incapacitated person and appointing her daughter Donna L. Ablassmeir plenary guardian of her estate and person. We also included in the decree several provisions to preserve judicial supervision over the management of Mrs. Collins' estate. Appellant filed exceptions to the final decree on October 24, 2007, by and through his attorney Brian M. Puricelli, Esquire. Appellant asserted broad constitutional challenges to the decree but filed no brief and cited no case law in support thereof. Appellant also argued that the law providing for entry of the decree was unconstitutional. Once again, no brief was filed and no case law was cited.

Without awaiting a decision on the exceptions,[9] appellant, by and through his attorney of record, Brian M.

---

8. The work of caring for Mrs. Collins is demanding. (N.T., 10/16/07, pp. 44-45, 160.) For example, Mrs. Ablassmeir testified that Barbara Sue Collins, who has been involved the most in caring for their parents, has neglected her life and lost jobs as a result of doing so. (N.T., 10/16/07, p. 44.) Eileen Mary Bray admitted that she has on previous occasions doubted whether she would be able to do the job. (N.T., 10/16/07, p. 160.)

9. According to Supreme Court O.C.R. 7.1(a), if "exceptions are filed, no appeal shall be filed until the disposition of exceptions except as provided in subdivision (d) (multiple aggrieved parties)." Subsection (d) provides that "[w]here more than one party is aggrieved by a final

Puricelli, Esquire, filed a notice of appeal with this court on November 19, 2007, together with a document titled "statement of issue on appeal." This opinion is filed in accordance with Pa.R.A.P. 1925(a).

## ISSUES ON APPEAL

Appellant raises in his "statement of issue on appeal"[10] a series of challenges to this court's final decree with respect to Eileen D. Collins.[11] For example, appellant

appealable order . . . a timely appeal filed by any party renders exceptions a nullity by any other party." The problem in this case is that appellant is the only party who filed exceptions and is the only party who filed a notice of appeal. Mrs. Collins' court-appointed counsel for purposes of the within proceeding has not filed exceptions and has not filed a notice of appeal. Likewise, not one of the petitioners filed exceptions or a notice of appeal.

10. The "statement of issue on appeal" consists of one fragmented paragraph which does not categorize the issues with specificity.

11. It must be observed that neither appellant nor his attorney has standing to appeal from this court's final decree on behalf of Mrs. Collins, even though appellant listed her as a co-appellant. Appellant's status as Mrs. Collins' husband does not grant him such standing. It suffices to say that the concept that a husband and wife are one legal unit rather than an association of two independent individuals has long been abandoned. See *e.g., Hack v. Hack,* 495 Pa. 300, 433 A.2d 859 (1981) (re-evaluating and rejecting outmoded principles of law governing the relationships between husbands and wives while abolishing the defense of interspousal immunity). Mrs. Collins' court-appointed counsel for purposes of the within proceedings, Maris C. Langford, Esquire, has not filed a notice of appeal with this court. Mrs. Ablassmeir, guardian of Mrs. Collins' person and estate, has not filed a notice of appeal with this court either. Undoubtedly, neither Mrs. Collins nor any one of her legally recognized representatives is seeking review of this court's decision. None of the petitioners is seeking review either. Nonetheless, as the Supreme Court of Pennsylvania has held, the issue of standing to appeal may not be raised by the court sua sponte (unless the issue is "intertwined with subject matter jurisdiction.)" See *e.g., In re Nomination Petition of deYoung,* 588 Pa. 194, 201, 903 A.2d 1164,

alleges that this court violated the protections afforded Mrs. Collins by the Health Insurance Portability and Accountability Act (HIPAA). Appellant, however, has waived appellate review of these arguments because he failed to raise them throughout the proceedings. See *Lineberger v. Wyeth f/k/a American Home Produdcts Corporation,* 894 A.2d 141, 148 (Pa. Super. 2006) (citing Pa.R.A.P. 302(a)).[12]

Appellant also challenges the constitutionality of the statute pursuant to which this court entered the final decree. Exceptions, ¶2. Appellant has waived review of this contention as well. Pennsylvania Rule of Civil Procedure 235 and Pennsylvania Rule of Appellate Procedure 521 require that notice be given to the attorney general whenever the constitutionality of a statute is challenged and the Commonwealth is not a party to the action. The Commonwealth is not a party to this action. No proof of service of such notice has been filed with this court. Appellant, thus, has waived appellate review of this argument. See *e.g., Faust v. Messinger,* 345 Pa. Super. 155, 159, 497 A.2d 1351, 1352-53 (1985) (citing *Matter of Adoption of Christopher P.,* 480 Pa. 79, 90, 389 A.2d 94, 100 (1978)).

Appellant also raises a series of undeveloped constitutional challenges to the portion of the decree providing for judicial oversight of Mrs. Collins' estate, which includes property in which appellant has either vested or

---

1168 (2006). At the trial court level, no party has challenged appellant's inclusion of issues pertaining solely to Mrs. Collins' legal rights in his "statement of issue on appeal." Therefore, we do not base our analysis on this argument.

12. Pennsylvania Rule of Appellate Procedure 302(a) provides that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."

contingent interests. Appellant argues inter alia that this court violated his "due process protections" and deprived him of his "constitutionally protected liberty and associational right decisions." Statement of issue on appeal. Appellant further argues that the October 19, 2007 decree "amounts to a taking of his property without first affording him procedural due process notice and opportunity to defend." Exceptions, ¶1.

Appellant, however, has waived review of these constitutional arguments for two reasons. First, he failed to raise these objections before this court. See *Lineberger, supra,* 894 A.2d at 148 (citing Pa.R.A.P. 302(a)). Second, the arguments he makes, by and through his attorney of record, are so vague and undeveloped that no meaningful review is possible. See *e.g., id.* ("When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues."); see also, Pa.R.A.P. 1925(b) (2)(ii), (vii) (2007); *Commonwealth v. Thompson,* 778 A.2d 1215, 1223 (Pa. Super. 2001). Appellant's general allegations render it impossible for this court to properly identify and review the specific issues appellant is attempting to articulate.

In short, appellant has failed to preserve *any* issue for appellate review. Therefore, his appeal should be dismissed. Nonetheless, we will briefly address the legal and evidentiary bases for this court's decision to exercise judicial supervision over the estate of Eileen D. Collins.

## DISCUSSION

"[I]n reviewing the decision of the orphans' court, [the] task is to assure that the record is free from legal error

and to determine if the chancellor's findings are supported by competent and adequate evidence, and are not predicated upon capricious disbelief of competent and credible evidence." *In re Estate of Schram,* 696 A.2d 1206, 1211 (Pa. Commw. 1997) (quoting *In re Estate of McCrea,* 475 Pa. 383, 386, 380 A.2d 773, 775 (1977)). The evidence before this court revealed that appellant and Mrs. Collins own two real estate properties in Upper Makefield Township, Bucks County, Pennsylvania. Response, ¶16 (Sept. 6, 2007). (N.T., 9/7/07, pp. 126-27.) Their permanent home is located on one of the parcels. The other property consists of an undeveloped tract of land. (N.T., 9/7/07, p. 127.) David J. Collins testified that the properties are titled in the names of both appellant and Mrs. Collins. (N.T., 9/7/07, pp. 126-27.)

As previously indicated, Mrs. Collins also receives Social Security income of $696 per month and has savings adding up to approximately $90,000 in the form of a certificate of deposit and either a savings or a checking account. Response, ¶16. (N.T. 9/7/07, p. 129; N.T., 10/16/07, p. 237.) Moreover, appellant has access to approximately $900,000 in certificates of deposit, investments, as well as checking and savings accounts. (N.T. 9/7/07, pp. 128-29; N.T., 10/16/07, p. 237.) There was no evidence that Mrs. Collins has access to any one of these investment instruments or accounts. Furthermore, there was no evidence that appellant has made Mrs. Collins a joint owner of these accounts.

Ancillary to this court's adjudication of Mrs. Collins as an incapacitated person and appointment of a guardian for her estate, this court ordered inter alia:

"The guardian of the estate shall have the authority and responsibility to manage and use Eileen D. Collins'

property for Ms. Collins' benefit in accordance with 20 Pa.C.S. §5536(a). Pursuant to 20 Pa.C.S. §5536(a), the guardian of the estate may spend income for the aforesaid purposes without the court's written approval. The guardian of the estate may also spend principal assets for the care and well-being of Eileen D. Collins in accordance with an approved budget and may establish an appropriate burial reserve." Final decree, pp. 3 (Oct. 19, 2007).

The authorization for the inclusion of this provision lies in the Pennsylvania Probate, Estates, and Fiduciaries Code. Pursuant to 20 Pa.C.S. §5537, the "court may authorize the guardian to retain such assets as are deemed appropriate for the anticipated expense of the incapacitated person's funeral." The Code further provides:

"The orphans' court division, for cause shown and with only such notice as it considers appropriate in the circumstances, may authorize or direct the payment or application of any or all of the income or principal of the estate of an incapacitated person for the care, maintenance, or education of the incapacitated person, his spouse, children or those for whom he was making such provision before his incapacity." 20 Pa.C.S. §5536(a).

A guardian, however, may not invade the principal of the incapacitated person's estate without prior court approval. See *e.g., In re Estate of Schram,* 696 A.2d 1206, 1212 (Pa. Commw. 1997) (citing section 20 Pa.C.S. §5536). In this case, we have insisted on this limitation by requiring that a budget be submitted to this court for approval before the guardian spends the principal of Mrs. Collins' estate and by ordering that no assets Mrs. Collins holds jointly with any other person may "be transferred, liquidated, or dissipated in any manner without prior court approval." Final decree, p. 2.

The purpose of this latter provision is two-fold. First, the provision prevents the guardian from invading the principal of Mrs. Collins' estate without prior approval from this court, as required by law. Second, this provision strikes a balance between Mrs. Collins' and appellant's property interests. It ensures that the guardian does not take possession of the entirety of Mrs. Collins' estate for Mrs. Collins' benefit to the detriment of appellant. It also ensures that appellant does not take action adverse to Mrs. Collins' interests with respect to said property.

The authority of this court to include said provision in the decree is amply supported by the applicable statutory and case law. Upon a finding of incapacity, this court's jurisdiction extends over Mrs. Collins' estate. Pursuant to 20 Pa.C.S. §711(10), the orphans' court division of the court of common pleas has mandatory jurisdiction over "[t]he administration and distribution of the real and personal property of the estates of incapacitated persons." Moreover, 42 Pa.C.S. §323 provides that "[e]very court shall have . . . all legal and equitable powers required for or incidental to the exercise of its jurisdiction, and, except as otherwise prescribed by general rules, every court shall have power to make such rules and orders of court as the interest of justice or the business of the court may require."

This court's jurisdiction further extends to all property Mrs. Collins holds jointly with appellant, given that she holds an interest in the entirety of such property and not merely in a discrete part thereof. We properly concluded that all assets Mrs. Collins holds jointly with appellant are held in tenancy by the entireties by virtue of their marriage.[13] "A tenancy by the entireties is a

---

13. Under Pennsylvania law, "[a]n intention to create [a tenancy by the entirety] is assumed from the deposit of an asset in both the names

unique form of co-ownership [that] exists when property, either real or personal, is held jointly by a husband and wife, with its essential characteristic being that each spouse is seised *of the whole or the entirety and not a divisible part thereof.*" *Clingerman v. Sadowski,* 513 Pa. 179, 183, 519 A.2d 378, 380-81 (1986) (emphasis added) (footnote omitted) (citing *In re Gallagher's Estate,* 352 Pa. 476, 43 A.2d 132 (1945)).

In addition, case law supports the inclusion of the provision barring dissipation, liquidation or transfer of Mrs. Collins' estate without prior approval from the court. *In re Estate of Morrissey,* 440 Pa. 439, 447, 269 A.2d 662, 667 (1970), which involved the appointment of a guardian for a minor, the Pennsylvania Supreme Court upheld a trial court's order enjoining the opening of a safe deposit box containing the entirety of a minor child's property without an order of court allowing it. *Id.* The Pennsylvania Supreme Court held that the trial court order enjoining the opening of the safe deposit box of the minor child without an order of court "was clearly within the proper exercise of the court's equitable pow-

---

of a husband and wife, without more, and from the fact of a marital relationship." *Constitution Bank v. Olson,* 423 Pa. Super. 134, 140, 620 A.2d 1146, 1149-50 (1993) (citing *inter alia Shapiro v. Shapiro,* 424 Pa. 120, 136, 224 A.2d 164, 172 (1966); *Madden v. Madden,* 336 Pa. Super. 552, 558, 486 A.2d 401, 404-405 (1985)). Said presumption may be overcome only by clear and convincing evidence to the contrary. *Constitution Bank,* 423 Pa. Super. at 141, 620 A.2d at 1150 (the type of ownership which is created in property when a husband and wife are involved, "and in the absence of clear and convincing evidence to the contrary, is as tenants by the entireties").

In this case, Mrs. Collins and appellant have been married for over six decades. There was no clear and convincing evidence that any property Mrs. Collins holds jointly with appellant is held in any type of ownership other than in tenancy by the entireties.

ers in acting for the best interests of minor children within its jurisdiction." *Id.* at 447, 269 A.2d at 667.

In the instant case, this court not only has the authority, but also the duty, to act in Mrs. Collins' best interest even though she is an adult. "[An] incapacitated person is, in effect, the ward of the court, and the incapacitated person's estate is in custodia legis." Standard Pennsylvania Practice 2d 164:1, p. 483 (citing inter alia *Commonwealth ex rel. Flowers v. Flowers,* 326 Pa. 138, 191 A. 914 (1937); *In re Davidson's Estate,* 323 Pa. 113, 185 A. 782 (1936)). Similar to the situation in the *Estate of Morrissey,* the order of this court protecting Mrs. Collins' jointly held assets from liquidation, transfer, or dissipation without prior court approval "was obviously ancillary to the appointment of a guardian and to maintain the status quo." 440 Pa. at 447, 269 A.2d at 667.

Appellant has expressed wishes to liquidate the couple's assets. (N.T., 9/7/07, pp. 75, 80.) For example, Barbara Sue Collins testified that attorneys visited her parents' home to discuss the sale of their real estate properties. (N.T., 9/7/07, pp. 75, 80.) Moreover, there was evidence that both appellant and his wife could potentially be the victims of predatory behavior. (N.T., 9/7/07, pp. 75, 112, 130.)

Barring appellant from liquidating, transferring or dissipating the property appellant holds jointly with Mrs. Collins without prior court approval does not violate his procedural due process rights. The Fourteenth Amendment of the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Constitution Amendment XIV, Section 1. Moreover, the Constitution of the Commonwealth of Pennsylvania provides: "All

men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pennsylvania Constitution Article 1, Section 1. With respect to property rights, the requirements of this Article "are not distinguishable from those of Section 1 of the Fourteenth Amendment to the Federal Constitution." *R. v. Commonwealth of Pa., Dept. of Public Welfare,* 535 Pa. 440, 461, 636 A.2d 142, 152 (1994) (quoting *Best v. Zoning Board of Adjustment,* 393 Pa. 106, 141 A.2d 606 (1958)).

The Due Process Clause's procedural component does not create the underlying property right afforded protection, "but protects the right created by statute or other legal basis." *Faust v. Messinger,* 345 Pa. Super. 155, 159, 497 A.2d 1351, 1352 (1985). Under Pennsylvania law, appellant does not have an unfettered right to transfer, liquidate, or dissipate the real estate properties he holds jointly with Mrs. Collins. In a tenancy by the entireties, "[n]either spouse . . . may independently appropriate property to his or her own use to the exclusion of the other." *Clingerman v. Sadowski,* 513 Pa. 179, 183, 519 A.2d 378, 381 (1986) (citing *Shapiro v. Shapiro,* 424 Pa. 120, 224 A.2d 164 (1966); *Berhalter v. Berhalter,* 315 Pa. 225, 173 A. 172 (1934); *Backus v. Backus,* 464 Pa. 380, 346 A.2d 790 (1975); *Del Borrello v. Lauletta,* 455 Pa. 350, 317 A.2d 254 (1974)). "An estate by the entireties is incapable of dissolution by one of the owners without the consent of the other, and neither spouse alone may alienate his or her interest in the property during the other's lifetime." *Daley v. Hornbaker,* 325 Pa. Super.

172, 176, 472 A.2d 703, 705 (1984). (footnote omitted)

Clearly, this court has not deprived appellant, or Mrs. Collins, of any property interest without due process of law. Appellant and Mrs. Collins received notice that petitioners were seeking the appointment of a plenary guardian for her person and estate. Appellant and Mrs. Collins received notice of the hearings. Appellant and Mrs. Collins were present at every hearing and were given the opportunity to participate. Our decisions to declare Mrs. Collins an incapacitated person, to appoint a plenary guardian for her person and her estate, and to protect her jointly held assets were based on clear and convincing evidence.

## CONCLUSION

For the foregoing reasons, this court's final decree should be affirmed and the appeal should be dismissed.