J-A11023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: MARGARET A. MCKEAN, AN INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  GREGORY L. MCKEAN | : | No. 649 WDA 2020 |

Appeal from the Order Entered June 22, 2020
In the Court of Common Pleas of Mercer County
Orphans' Court at No(s):  2020-70

BEFORE:  McLAUGHLIN, J., KING, J., and McCAFFERY, J.

MEMORANDUM BY KING, J.:                    **FILED: AUGUST 12, 2021**

Appellant, Gregory L. McKean, appeals from the order entered in the

Mercer County Court of Common Pleas Orphans' Court, naming Appellee, Kirke

McKean, guardian of the estate of Margaret A. McKean ("Mother").  We affirm.

The Orphans' Court opinion set forth the relevant facts and procedural

history of this case as follows:

> This matter was commenced by the filing of a petition to
> appoint a plenary guardian for an incapacitated person
> [filed] by [Appellee] on January 24, 2020.  On January 27,
> 2020, the court entered an order scheduling a hearing and
> appointing counsel for the alleged incapacitated person,
> [Mother].  …  On February 11, 2020, the hearing was
> continued and rescheduled for April 1, 2020.  In the interim,
> on March 2, 2020, [Appellant] filed a response to
> [Appellee]'s petition.  The Covid-19 virus made it impossible
> to hold an in-person hearing on April 1st, but the court
> conferred with counsel over the phone and entered an order
> on April 2, 2020.  The court ordered that [Appellee] and
> [Appellant] serve as temporary emergency co-guardians of
> the estate, and the hearing was continued and rescheduled

for May 7, 2020. On that date, the first day of the three-day hearing took place, after which the court extended the temporary emergency co-guardianship of the estate until June 19, 2020 with the consent of the parties. The court also ordered the co-guardians to provide the court with accountings, which each of them subsequently did. The hearing continued June 17, 2020 and concluded on June 18, 2020.

(Orphans' Court Opinion, filed August 25, 2020, at 1-2) (some capitalization omitted).

At the hearings, Mother's four sons, including Appellant and Appellee, testified regarding her condition. Appellee also presented Dr. Carmella Gonzales, a neurologist, who testified that Mother's medical history revealed her incapacitation commenced as early as March 2017. Further, the parties introduced evidence of several financial transactions between Appellant and Mother's estate that highlighted a possible conflict of interest for Appellant.[1]

On June 22, 2020, the Orphans' Court issued the following findings of fact:

1. [Mother] has what the [c]ourt deems to be a complex estate, which includes at least 1.31 million dollars in

_____

[1] Regarding these transactions, the court noted:

[T]here appears to be a conflict in the estate. The [c]ourt does not make a definitive finding that any improper transactions have been taken; however, THE COURT NOTES the farm … transfer, a $40,000 cash transfer, a post office building transfer, purchase of a vehicle, and other assets … may not have been properly transferred.

(Order, filed 6/22/20).

investments, livestock cattle, a trust, a limited partnership, and a general partnership.

2. [Mother] is deemed to be incompetent by the [c]ourt.

3. That the date of incompetency is found to be March of 2017.

(Order, filed 6/22/20). That same day, the court entered a separate order naming Appellee as guardian of Mother's estate and Appellant as guardian of Mother's person.

Appellant timely filed a notice of appeal on July 2, 2020. On July 6, 2020, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on July 23, 2020.

With the appeal pending, Mother died on January 3, 2021. On April 26, 2021, Appellee filed an application to dismiss the appeal as moot. Appellee argues that "[t]he death of an incapacitated person renders moot the issues or questions regarding the guardianship proceedings." (Application to Dismiss, filed 4/26/21, at ¶5). Appellant filed an answer on May 3, 2021, claiming appellate review remains necessary due to "collateral issues with regard to the guardianship." (Answer to Application to Dismiss, filed 5/3/21, at ¶5).

As a prefatory matter, we must determine whether the issues raised in the instant appeal are moot. The following principles apply when evaluating mootness:

> In this Commonwealth, an actual claim or controversy must be present at all stages of the judicial process for the case to be actionable or reviewable. If events occur to eliminate the claim or controversy at any stage in the process, the case becomes moot. In those instances, however, where the case involves an important public interest that is capable of repetition but is likely to continually evade appellate review, we may reach the merits of an appeal despite its technical mootness.

*In re Appointment of a Guardian of Gerber*, 824 A.2d 1204, 1206 (Pa.Super. 2003) (internal citations and quotation marks omitted).

In determining whether the death of an incapacitated person renders the appeal from guardianship proceedings moot, this Court has endorsed consideration of "the collateral consequences of permitting the trial court's adjudication of incompetency to stand without appellate review." *Id.* "Our legislature outlined these potential consequences in Section 5524 of the Decedents Estates and Fiduciaries Act." *Id.* *See also* 20 Pa.C.S.A. § 5524 (stating partially incapacitated person shall be incapable of making any contract or gift or any instrument in writing in those areas in which they have been found to be incapacitated; totally incapacitated person shall be incapable of making any contract or gift or any instrument in writing).

Here, Mother's death rendered Appellant's claims technically moot. *See Gerber, supra* (holding challenge to appointment of son as plenary guardian over mother's person was rendered moot when mother died). Nevertheless, the court's decision to appoint Appellee as guardian Mother's estate triggered certain collateral effects. As Appellant notes in his brief, he disputes the

court's findings regarding the date when Mother became incapacitated. Appellant emphasizes that such findings "flung open the door for [Appellee] to attempt to [undo] and upset the well-reasoned financial plans of [Mother] undertaken in the years leading up to the guardianship proceedings." (Appellant's Brief at 11). This argument appears to implicate the collateral consequences set forth in Section 5524, and we elect to reach the merits of Appellant's issues on appeal.[2] ***See Gerber, supra***. Therefore, we deny Appellee's application to dismiss.

We now address the four issues Appellant raises for our review:

Did the [Orphans' Court] commit error in finding that the date of incapacity for [Mother] was March 2017?

Did the [Orphans' Court] commit error in allowing testimony over objection by Appellant's counsel on at least six separate occasions?

Did the [Orphans' Court] commit error in appointing [Appellee] as Guardian of the Estate of [Mother]?

Does the trial judge's *sua sponte* disqualification on an ancillary matter to this appeal, based upon a party's counsel being a member of the same law firm as the Judge's custody

---

[2] Moreover, on December 30, 2020, the court ordered Mother's estate to reimburse Appellee for legal fees, costs, and expert witness fees associated with the guardianship proceedings. (***See*** Answer to Application to Dismiss at Exhibit C). Appellant filed a notice of appeal from this order, and his appeal remains pending in this Court. ***See In re McKean***, No. 133 WDA 2021. Appellant insists that "[i]f this Court determines that the appointment of [Appellee] was improper, then counsel's basis for seeking … fees is groundless," and Appellant will be entitled to relief in the related appeal. (Answer to Application to Dismiss at ¶5). Thus, this additional collateral consequence provides further justification for this Court to conduct appellate review in the instant case.

lawyer, render the disqualification as void *ab initio*?

(Appellant's Brief at 5-6).

In his first issue, Appellant asserts that a court cannot find that an individual was incapacitated as of a date prior to the commencement of guardianship proceedings. Appellant relies on **In re Hastings' Estate**, 387 A.2d 865 (Pa.Super. 1978), for the proposition that a determination of incapacitation is prospective only. Additionally, Appellant argues that the court erred in accepting the opinion of Dr. Gonzales. Appellant complains that Dr. Gonzales was a paid expert who did not personally assess Mother before opining that Mother became incapacitated in March 2017. Appellant insists this date prejudices Mother and the financial plans she made prior to the filing of Appellee's guardianship petition. Appellant concludes that the court erred in finding the date of incapacity for Mother to be March 2017. We disagree.

When reviewing Orphans' Court proceedings, this Court must determine whether the court's findings are based on competent and credible evidence. **In re Estate of Albright**, 545 A.2d 896 (Pa.Super. 1988), *appeal denied*, 522 Pa. 571, 559 A.2d 33 (1989).

> [T]he Court is bound by the trial judge's findings of fact unless those findings are not based on competent evidence. Conclusions of law, however, are not binding on an appellate court whose duty it is to determine whether there was a proper application of law to fact by the [trial] court.

**In re Peery**, 556 Pa. 125, 129, 727 A.2d 539, 540 (1999).

Issues not raised in the Orphans' Court are waived and cannot be raised

- 6 -

for the first time on appeal. *See* Pa.R.A.P. 302(a). "Under prevailing Pennsylvania law, a timely objection is required to preserve an issue for appeal." *Shelhamer v. Crane*, 58 A.3d 767, 770 (Pa.Super. 2012) (quoting *Samuel-Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 446, 34 A.3d 1, 45 (2011)).

Instantly, the Orphans' Court analyzed the record and determined:

> After the court dictated its adjudication, findings of fact, conclusions of law, and order after the third day of the hearing, the court gave counsel the opportunity to make objections and/or offer corrections but [Appellant]'s counsel did not make any objections or offer any corrections relative to the date of incapacity.

(Orphans' Court Opinion at 8) (some capitalization omitted). Our review of the June 18, 2020 transcript confirms that Appellant did not object to the order as dictated by the court. (*See* N.T. Hearing, 6/18/20, at 237). Consequently, Appellant failed to preserve his issue regarding the date of Mother's incapacitation. *See Shelhamer, supra*; Pa.R.A.P. 302(a).

Even if Appellant had preserved his claim, the court properly considered the date of incapacitation in order to determine the most suitable guardian for Mother's estate:

> To decide on a guardian of the estate, the court needed to determine if either of the two candidates, [Appellee] or [Appellant], had conflicts of interest. [Appellant] maintained he did not have any conflicts of interest which would preclude him from serving as guardian of the estate. To disprove this, [Appellee] presented considerable evidence of dealings between [Mother] and [Appellant] or his family which benefitted [Appellant] or his family and for which [Mother] received little or no consideration. If these

- 7 -

were gifts [Mother] made with full capacity, then they may not evince a conflict of interest. If, however, [Mother] was of diminished capacity or incompetent when the transfers happened, then the transfers reflect badly on [Appellant] as a potential guardian of the estate because he and his wife were in many respects *de facto* caretakers for his mother during the period in question. It is in this context the court decided the incapacity date in 2017.

(Orphans' Court Opinion at 9) (internal footnote and some capitalization omitted).

Here, the court inquired into the date of Mother's incapacitation for the limited purpose of selecting the most suitable guardian of the estate. **See** 20 Pa.C.S.A. § 5511 (stating, "The court shall not appoint a person … whose interests conflict with those of the incapacitated person except where it is clearly demonstrated that no guardianship support agency or other alternative exists"). To the extent Appellant complains that the court's findings regarding the date of incapacity might undermine Mother's prior financial transactions, the court emphasized that the validity of such transactions was not before it. (**See** Orphans' Court Opinion at 8). Additionally, Appellee's presentation of expert testimony from Dr. Gonzales constituted competent evidence to support the court's findings of fact. Under these circumstances, the court's findings of fact did not amount to reversible error. **Compare Hastings' Estate, supra** (stating that if person is adjudicated incompetent and thereafter executes will, burden is on proponent of will to show that person possessed testamentary capacity at time will was made; determination of incompetence is prospective). Accordingly, Appellant is not entitled to relief

on his first claim.

In his second issue, Appellant argues that the court erroneously ruled on six different evidentiary objections made by his attorney. While Appellant's brief detailed each objection, his Rule 1925(b) statement did not. "An appellant's concise statement must identify the errors with sufficient specificity for the trial court to identify and address the issues the appellant wishes to raise on appeal." **Satiro v. Maninno**, 237 A.3d 1145, 1150 (Pa.Super. 2020). Here, Appellant's Rule 1925(b) statement did not specifically identify the six evidentiary rulings Appellant now challenges on appeal. In light of this failure, the Orphans' Court explained: "[T]his issue is waived. It is vague and overbroad, and it is not practical for [the c]ourt to address every one of counsel's objections which was overruled." (Orphans' Court Opinion at 10). We agree that Appellant's vague Rule 1925(b) statement results in waiver.[3] **See Satiro, supra**; Pa.R.A.P. 1925(b)(4)(ii). Accordingly, Appellant is not entitled to relief on his second issue.[4]

_____

[3] "Upon application of the appellant and for good cause shown, the judge may … permit an amended or supplemental Statement to be filed." Pa.R.A.P. 1925(b)(2)(i). Here, Appellant acknowledged the deficiencies in his original Rule 1925(b) statement, and he filed a petition seeking permission to amend it on September 29, 2020. The court denied Appellant's petition on October 30, 2020.

[4] We also note with disapproval that Appellant's brief failed to cite to any relevant authority to support his second issue. (**See** Appellant's Brief at 13-17). This briefing defect provides another, independent basis in support of our conclusion that Appellant waived his second issue. **See In re Estate of**
*(Footnote Continued Next Page)*

In his third issue, Appellant asserts that a court may appoint a guardian only if there is an adjudication of incapacity **and** a need for the guardianship. Appellant insists that Mother did not need guardianship services because he provided adequate *de facto* guardianship services. Appellant concludes that the court erred in appointing Appellee as guardian of the estate. We disagree.

"The discretion of a court in the appointment or non-appointment of a guardian will not be disturbed on appeal in the absence of an abuse of discretion or an error of law." **In re Morrissey's Estate**, 440 Pa. 439, 446, 269 A.2d 662, 666 (1970). "A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous." **In re Scheidmantel**, 868 A.2d 464, 479 (Pa.Super. 2005).

"A court may appoint a plenary guardian of the estate only upon a finding that the person is totally incapacitated and in need of plenary guardianship services." 20 Pa.C.S.A. § 5512.1(e). The court shall consider the need for guardianship services "in light of such factors as the availability of family … to assist the individual in making decisions and in light of the existence, if any, of advance directives such as durable powers of attorney or trusts." 20 Pa.C.S.A. § 5512.1(a)(3). "The court may appoint as guardian any qualified individual…." 20 Pa.C.S.A. § 5511(f). **See also Wilhelm v.**

---

**Whitley**, 50 A.3d 203, 209 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013) (reiterating: "This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority").

*Wilhelm*, 657 A.2d 34, 39 (Pa.Super. 1995) (holding son of incapacitated person was not disinterested person who could be appointed guardian of funds in joint accounts between incapacitated person and his children, given that children each had interest that conflicted with that of incapacitated person).

Instantly, the court found that Mother was incompetent, and she did not have a valid power of attorney. Consequently, the court opted to appoint Appellee as guardian of Mother's estate:

> When appointing [Appellee] guardian of the estate, the court considered the following factors: [Appellee's] success in business, his willingness to waive or forego rights or entitlements to avoid fiduciary conflicts, his distance from his mother's business dealings, and [Appellant's] involvement with, or potential conflicts of interest arising from, questionable transfers from his mother to he or his family. The transfers raised questions as to [Appellant's] ability to safeguard [Mother's] assets and estate and make it unreasonable to expect him to pursue legal means of restoring the transferred property to his mother as may be appropriate. Alan McKean, who testified on behalf of his brother[, Appellee], and Guy McKean, who spoke briefly on the last day of the hearing, both wished for [Appellee] to be appointed guardian of the estate.

(Orphans' Court Opinion at 11).

Here, the court properly considered the advantages of appointing Appellee, as well as the potential conflicts of interest caused by Appellant's history of transactions with Mother. *See* 20 Pa.C.S.A. § 5511(f); *Wilhelm, supra*. As the record supports Appellee's appointment, we cannot say that the Orphans' Court abused its discretion. *See Morrissey, supra*; *Scheidmantel, supra*. Accordingly, Appellant is not entitled to relief on his

- 11 -

third issue.

In his fourth issue, Appellant notes that the Orphans' Court judge entered a temporary recusal order on July 28, 2020, wherein the judge acknowledged that Alan McKean's counsel was in the same law firm as the judge's personal attorney. Appellant complains that the judge's temporary recusal tainted the proceedings *ab initio*. Appellant, however, did not include this issue in his Rule 1925(b) statement. (**See** Rule 1925(b) Statement, filed 7/23/20, at 1-2). Although Appellant attempted to include this issue in an amended Rule 1925(b) statement, we reiterate that the court did not give him permission to file the amended statement. **See** Pa.R.A.P. 1925(b)(2)(i). Based upon the foregoing, Appellant's final issue is waived.[5] Accordingly, we affirm the order naming Appellee as guardian of Mother's estate.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/12/2021

---

[5] We also note that the Orphans' Court judge's temporary recusal order was entered after Appellant filed his notice of appeal. Generally, "after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701(a).